**LAW OFFICES OF STEVEN J. PARSONS**
ANDREW L. REMPFER, ESQ.
Nevada Bar No. 8628
andrew@sjplawyer.com
JENNIFER D. GOLANICS, ESQ.
Nevada Bar No.: 13687
Jennifer@sjplawyer.com
10091 Park Run Dr., #200
Las Vegas, NV 89145-8868
T: (702) 384-9900
F: (702) 384-5900

Attorneys for Plaintiff
**DIAMANDIA LINGOS**

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Case No.:

9
10
11

| | |
|---|---|
| **DIAMANDIA LINGOS** an individual | **COMPLAINT** |
| Plaintiff, | **CLAIMS FOR RELIEF:** |
| vs. | 1.  Violation of Title VII & NRS 613.330; |
| **U GYM, LLC, a Nevada limited liability company; ULTIMATE NEV, LLC, a foreign company; d/b/a "UFC GYM"**; DOES I thru V, inclusive; ROE CORPORATIONS I thru V, inclusive, | 2.  Retaliation re: Title VII & NRS 613.340; and, |
| Defendant. | **JURY DEMAND** |

12
13
14
15
16
17
18
19
20
21
22

Plaintiff, **DIAMANDIA LINGOS** (hereafter "Lingos"), hereby files her Complaint against **U GYM, LLC**, a Nevada limited liability company, **ULTIMATE NEV, LLC,** a foreign company, d/b/a "**UFC GYM**" ("The Company" or "Defendant") as follows:

## THE PARTIES

1.      Lingos is, and at all times relevant to this action was, a bona fide resident of

23
24
25
26
27

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 1 of 11



1  Clark County, Nevada.

2      2.     Lingos worked for Defendants as a Senior Graphics Designer from 2013 until

3  2015.

4      3.     Defendant U GYM, LLC is a Nevada-based limited liability company, with its

5  managing member as ULTIMATE NEV, LLC.

6      4.     ULTIMATE NEV, LLC, is a foreign-based limitated liability company, not

7  registered in the state of Nevada but, acting as the managing member of U GYM, LLC.

8      5.     Combined, these entities operate as "UFC GYM", which markets itself as

9  providing physical exercise services styled upon the 'mixed martial arts' skills popularly

10  marketed by the Ultimate Fighting Championshp.

11      6.     Defendants operate throughout Clark County, Nevada.

12      7.     Defendants are an employer engaged in an industry affecting commerce with

13  fifteen (15) or more employees and/or members.

14      8.     As an employer with more than fifteen (15) employees, Defendants are required

15  to comply with all state and federal statutes and laws prohibiting discrimination.

16      9.     The true names of DOES I through X and Roe Corporations I through X, their

17  citizenship and capacities, whether individual, corporate, associate, partnership or otherwise,

18  are unknown to Lingos who therefore sue these defendants by such fictitious names. Lingos

19  is informed and believes, and therefore alleges, Defendants' entities, including DOES I

20  through X and Roe Corporations I through X, were individuals who are in some manner

21  negligent and wrongful towards Lingos, caused injury to Lingos, or otherwise damaged Lingos.

22  Lingos is further informed and believe, and therefore allege, that each of the Defendant's

23  entities, designated as DOES I through X and Roe Corporations I through X, are or may be,

24  legally responsible for the events referred to in this action and other events not mentioned in

25  this action, and caused damages to Lingos including but not limited to causing Lingos, and

26  those similarly situated, to not be paid their lawful wages.

27      10.     Lingos will ask leave of this Court to amend the Complaint to insert the true

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 2 of 11



1   names and capacities of such the Defendants' entities, when the same have been

2   ascertained, and to join them in this action, together with the proper charges and allegations.

3   **JURISDICTION AND VENUE**

4        11.   This action is brought pursuant to the Americans with Disabilities Act ("ADA"),

5   42 U.S.C. § 1201, et. seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et.

6   seq.

7        12.   Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

8        13.   This action also arises out of claims from Nevada's anti-discrimination statutes,

9   N.R.S. § 613.330, as well as claims arising under the common law of the State of Nevada.

10   These claims are so related to the claims in the action within the original jurisdiction of this

11   Court that they form part of the same case or controversy under Article III of the United States

12   Constitution. As such, these claims are properly within the Court's jurisdiction pursuant to 28

13   U.S.C. § 1367(a).

14        14.   Lingos filed her Charge of Discrimination with the United States Equal

15   Employment Opportunity Commission ("EEOC") in a timely fashion.

16        15.   Lingos received a Right to Sue Letter less then ninety days prior to filing this

17   Complaint.

18        16.   Lingos has satisfied all administrative and jurisdiction conditions precedent to

19   filing this Complaint.

20        17.   Ms. Lingos was hired in September 2013 as the Senior Graphics Designer.

21        18.   She was based in Las Vegas, Nevada, though UFC Gym's primary location is in

22   Santa Ana, California.

23        19.   As the Senior Graphics Designer, she would earn $70,000. Her duties included

24   graphics design, creating templates for marketing and internal documents, as well as work

25   with the UFC unit.

26        20.   Shortly after beginning, Ms. Lingos began designing work flow, printing

27   materials, digital assets, project management systems, organizing prior assets and files.

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*



1    21.    She additionally managed all marketing requests from all UFC Gym franchisees

2    while designing, managing and handling traffic for all marketing requests from corporate-

3    owned UFC Gyms. Id.

4    22.    In May 2014, she received a substantial pay increase from $70,000 to

5    $95,000 and was promoted to Director of Creative Services.

6    23.    Her personnel file, which consisted of 25 total pages, does not contain a single

7    negative performance review regarding Ms. Lingos (nor, in fact, is there any performance

8    review).

9    24.    Because of her substantial pay increase, UFC Gym was pleased with her

10   performance. At the time of her promotion, her supervisor was Linell Killus, with whom Ms.

11   Lingos worked effectively.

12   25.    In January 2015, Ms. Jenna Cassidy became Ms. Lingos' supervisor. For a while,

13   their working relationship was satisfactory. Around April and early May 2015, Ms. Cassidy

14   began undermining Ms. Lingos.

15   26.    At that time, Ms. Cassidy's communications (style/tone/approach) all

16   dramatically changed towards Ms. Lingos. Inexplicably, Ms. Cassidy removed Ms. Lingos from

17   projects and pulled them from her without forewarning Ms. Lingos.

18   27.    Isolated and ostracized, Ms. Lingos was then forced to start interviewing

19   individuals as the "hiring manager". She was also expected to review portfolios for Graphics

20   Designers on her team but, those Designers would be working in the Santa Ana, California

21   office.

22   28.    By June, Ms. Lingos was finally able to begin interviewing candidates.

23   29.    Ms. Lingos favored several candidates for second interviews but, Ms. Cassidy

24   would not agree to Ms. Lingos' proposals for second interviews.

25   30.    It was at this point where communications with Ms. Cassidy substantially

26   deteriorated so much that Ms. Lingos personally discussed it with Denitza Batchrova. V.P. of

27   Strategy and Business Ventures.

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 4 of 11



1    31.   Ms. Lingos expressly said during this conversation she thought she was being

2    set up for failure or termination based on Ms. Cassidy's then-current communications with

3    Ms. Lingos.

4    32.   Though Ms. Batchrova said she would try to help and discuss these issues

5    during meetings, nothing improved.

6    33.   Around this time Ms. Lingos was accepted into a five-day Yale University School

7    of Management-based business conference entitled "Business Perspectives for Creative

8    Leaders 2015".

9    34.   The conference would cost $8,900, exclusive of travel-related costs.

10   35.   On July 16, 2015, Ms. Lingos informed her management team (including Ms.

11   Cassidy), about her acceptance into the program.

12   36.   Ms. Lingos also personally discussed with Ms. Cassidy that UFC Gym would

13   subsidize the cost of this program, as it routinely has paid for training, seminars, professional

14   development for other executives in the past. We know the Company paid for continuing

15   education and professional development for the Corporate Trainer, who confirmed UFC

16   reimburses these costs.

17   37.   Heidi Noland, V.P. of Global Creative for UFC also knew of Ms. Lingos problems

18   with Ms. Cassidy.

19   38.   In sum, practically every upper-level manager either at UFC Gym or UFC knew

20   Ms. Cassidy had set out to target Ms. Lingos to fail or be terminated.

21   39.   An August 21, 2015 email exchange Ms. Cassidy initiated supports Ms. Lingo's

22   arguments.

23   40.   In these emails, Ms. Cassidy blames Ms. Lingos for delays on projects (SAPEIO,

24   for one) from which Ms. Cassidy removed Ms. Lingos.

25   41.   That day – August 21, 2015 – Ms. Lingos learned her job title (and duties)

26   changed; Ms. Cassidy unilaterally declared Ms. Lingos was the "Director of Creative

27   Operations".

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 5 of 11



42.     Ms. Cassidy's communications with Ms. Lingos, by this point, were at an all-time low.

43.     Once more, Ms. Lingos brings it to the attention of UFC by talking to **Ms. Batchrova,** about Ms. Cassidy's behavior.

44.     As Ms. Lingos told Ms. Batchrova, nothing changed after this conversation.

45.     Trying her best to continue doing her job, Ms. Lingos emailed Ms. Cassidy an agenda to discuss deadlines and approval processes. By now, though, communications with Ms. Cassidy were basically shut down. Ms. Lingos was told by Ms. Cassidy to wait and find out from her what was happening.

46.     Stressed, ignored, and left to anxiously await Ms. Cassidy's direction, on August 13, 2015, Ms. Lingos requested from Ms. Cassidy three paid days off, which she had accrued in her paid-time off bank.

47.     Ms. Cassidy denied Ms. Lingos' request because, allegedly, she had exceeded her available PTO days. That was wrong, as Ms. Lingos had only taken one day off before this (having worked the two other days she was supposedly off during the year).

48.     Also, the Yale-based management program was not marked as "PTO".

49.     Forced to work in a highly stressful environment, where her direct report would not respond to her, talk to her or provide her any professional direction as to projects, Ms. Lingos continued suffering from Ms. Cassidy's increasingly hostile tone.

50.     On August 23, 2015 Ms. Lingos consequently sought from Ms. Cassidy permission to take paid-time off.

51.     Ms. Cassidy again rejected the request, forcing Ms. Lingos to take three (emergency) absences to address the health consequences of Ms. Cassidy's abuse. When Ms. Lingos returned, Ms. Cassidy kept up attacking Ms. Lingos.

52.     Tired of Ms. Cassidy's truly hostile emails, Ms. Lingos contacted Adam Sedlack, President of UFC Gym.

53.     On August 26, 2015, Ms. Lingos complained to Mr. Sedlack about Ms. Cassidy's

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 6 of 11



1  communicative style, poor management and harassing behavior. She also discussed the

2  tuition reimbursement with him.

3      54.    Mr. Sedlack expressly told Ms. Lingos to submit the reimbursement request. He

4  also promised we would investigate the "issues" Ms. Cassidy had created.

5      55.    Mr. Sedlack must have informed Ms. Cassidy about these "issues" because,

6  two days later, Ms. Cassidy again aggressively attacked Ms. Lingos via email.

7      56.    The August 28, 2015 email thread between Ms. Cassidy and Ms. Lingos shows

8  Ms. Cassidy leveling ad hominem accusations that Ms. Lingos "withheld information" and

9  questioning her integrity is particularly abusive.

10     57.    Ms. Lingos was then out of work from September 14 through September 16,

11 2015.

12     58.    When she returned on September 17, 2015, she learned from Ms. Cassidy and

13 Mr. Kenny Timmering her position was "eliminated", so she was terminated.

14     59.    The following day, however, Jeff Wallace, assumed Ms. Lingos' job and he holds

15 the same title Ms. Lingos formerly held.

16                          **FIRST CLAIM FOR RELIEF**

17 **(Violation of Title VII: Gender Discrimination & Hostile Work Environment in Violation of 42**

18                  **U.S.C. § 2000e & Nev. Rev. Stat. § 613.330)**

19     60.    Lingos repeats and realleges the allegations above at if fully set forth herein.

20     61.    42 U.S.C. §2000e-2(a)(1) of the Civil Rights Act of 1964 and Nevada Revised

21 Statute § 613.330 both render it illegal to treat an employee differently based on their gender.

22     62.    As alleged above, Defendants treated Lingos differently based on her gender.

23 Namely, Defendants disregarded Lingos's complaints about a hostile work environment,

24 which Ms. Lingos made in June 2015, onward, to her superiors, as alleged in paragraphs 23

25 through 56. Ms. Lingos repeats and reincorporates those paragraphs here, as if fully set forth

26 herein, which allegations form the bases for this claim.

27     63.    Ms.    Cassidy's    severe,    pervasive    behavior,    combined    with

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 7 of 11



1   management/supervisors' indifference towards Ms. Lingos complaints, constitutes a

2   subjective – and objectively – hostile work environment because management/supervisors

3   failed to remediate Ms. Lingos's complaints. Ms. Cassidy's behavior on behalf of Defendants

4   – such as her antagonizing emails, imperious management style, and her general disregard

5   of Ms. Lingos's authority – were all designed to harass, abuse, and set-up Ms. Lingos for

6   failure.

7       64.     A reasonable person would have considered Ms. Cassidy's behavior hostile,

8   intimidating, and a condition of continued employment. Indeed, Ms. Lingos had to resort to

9   the President of UFC Gym – Andrew Sedlack – to try and remediate the situation. But, even

10   then, Defendants failed to even feign an attempt to remediate Ms. Lingos's concerns.

11      65.     Frustrated with Defendants' complete failure to investigate Ms. Lingos's

12   allegations, she took off two days from work from September 14 thru September 16, 2015.

13      66.     Defendants also committed gender discrimination against Ms. Lingos when it

14   replaced her with a male counterpart the day after Ms. Lingos returned from work on

15   September 17, 2015.

16      67.     Ms. Lingos belongs to a protected category: she is a female.

17      68.     Ms. Lingos's male replacement holds her same job title, and duties. Defendants

18   initially attempted to lie about those two facts to Ms. Lingos.

19      69.     Her male counterpart – Jeff Wallace - was treated better than Ms. Lingos.

20      70.     Ms. Lingos suffered an adverse employment action: she was terminated from

21   her position.

22      71.     Gender was a motivating factor in Defendants' decision to replace Ms. Lingos

23   with a male employee.

24      72.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e,

25   *et. seq.* or Nev. Rev. Stat. § 613.330, *et. seq.*, Lingos has suffered lost wages, lost benefits,

26   lost seniority, lost future earnings, lost employment opportunities, humiliation,

27   embarrassment and loss of self-esteem, with damages in an amount to be determined at trial.

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 8 of 11



1    Therefore, Lingos seeks all legal and equitable remedies available at law.

2    73.    Defendants' above-referenced acts were fraudulent, malicious, oppressive and
3    done with the intent to harm Lingos. Consequently, Lingos seeks an award of punitive
4    damages in an amount to sufficient to punish and deter Defendants from harming other
5    similarly situated employees.

6    74.    Lingos has been forced to procure the services of an attorney to represent her
7    in this matter and, pursuant to 42 U.S.C. §2000e, *et. seq.* or Nev. Rev. Stat. §613.340, *et.*
8    *seq.*, Lingos is entitled to her attorneys' fees as a result of Defendants' acts.

9    75.    Furthermore, Defendants' actions were malicious, oppressive, fraudulent or
10   done with reckless indifference to Lingos' rights, thus justifying an award of punitive damages.

11                              SECOND CLAIM FOR RELIEF

12              (Retaliation re: Title VII & Nev. Rev. Stat. § 613.340)

13   76.    Lingos repeats and re-alleges each and every allegation set forth in the
14   foregoing and following paragraphs as if fully set forth herein.

15   77.    42 U.S.C. §2000e-3(a) makes it unlawful for an "employer to discriminate
16   against any of [its] employees … because he has made a charge, testified, assisted, or
17   participated in any manner in an investigation" regarding an employment practice made illegal
18   by Title VII. Likewise, N.R.S. §613.340, *et. seq.*, contains a similar prohibition.
19

20   78.    Lingos engaged in a protected activity by complaining to her supervisors about
     Ms. Cassidy's hostile behavior, as alleged in paragraphs 23 through 56. Ms. Lingos repeats
21
     and reincorporates those paragraphs here, as if fully set forth herein, which allegations form
22
     the bases for this claim.
23

24   79.    In fact, Ms. Lingos expressly complained about her supervisor's behavior to Ms.
     Batchrova (HR), and Mr. Sedlack, the President of UFC Gym. Neither individual attempted to
25
     remediate Ms. Lingos's concerns about Ms. Cassidy's workplace hostility.
26

27

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 9 of 11



1    80.    In fact, Ms. Lingos complained to Mr. Sedlack about Ms. Cassidy on August 25,

2    2015.

3    81.    Upon information and belief, Mr. Sedlack discussed with Ms. Cassidy the

4    complaints Ms. Lingos made about Ms. Cassidy.

5    82.    Ms. Lingos then took some time off on September 14-16, 2015.

6    83.    When Ms. Lingos returned to work, she suddenly had her position "eliminated"

7    after she complained to both Ms. Batchrova and Mr. Sedlack about Ms. Cassidy.

8    84.    Ms. Lingos engaged in a protected activity by voicing her concerns with

9    management regarding Ms. Cassidy's hostile behavior.

10    85.    Ms. Lingos suffered an adverse employment action after she complained about

11    the hostile work environment: Ms. Lingos lost her job just three weeks after she complained

12    to Mr. Sedlack about Ms. Cassidy's hostility.

13    86.    As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e,

14    *et. seq.* or Nev. Rev. Stat. § 613.340, *et. seq.*, Lingos has suffered lost wages, lost benefits,

15    lost seniority, lost future earnings, lost employment opportunities, humiliation,

16    embarrassment and loss of self-esteem, with damages in an amount to be determined at trial.

17    Therefore, Lingos seeks all legal and equitable remedies available at law.

18    87.    Defendants' above-referenced acts were fraudulent, malicious, oppressive and

19    done with the intent to harm Lingos. Consequently, Lingos seeks an award of punitive

20    damages in an amount to sufficient to punish and deter Defendants from harming other

21    similarly situated employees.

22    88.    Lingos has been forced to procure the services of an attorney to represent her

23    in this matter and, pursuant to 42 U.S.C. § 2000e, *et. seq.* or Nev. Rev. Stat. §613.340, *et.*

24    *seq.*, Lingos is entitled to her attorneys' fees as a result of Defendants' acts.

25    89.    Furthermore, Defendants' actions were malicious, oppressive, fraudulent or

26    done with reckless indifference to Lingos' rights, thus justifying an award of punitive damages.

27    . . .

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 10 of 11



## PRAYER FOR RELIEF

WHEREFORE, Lingos requests a judgment against Defendants as follows:

1. For a trial by jury;

2. For compensatory damages and punitive damages;

3. Prejudgment interest;

4. For reasonable attorneys' fees and costs; and

5. Such other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, the Seventh Amendment to the Constitution of the United States, as well as Article 1, Section 3 of the Constitution of the State of Nevada, Lingos hereby demands a jury trial for each of her claims for relief.

Dated: Friday, July 15, 2016              Respectfully Submitted By:

**LAW OFFICES OF STEVEN J. PARSONS, ESQ.**

By: /s/ Andrew L. Rempfer, Esq.

Andrew L. Rempfer, Esq.

Jennifer D. Golanics, Esq.

ATTORNEYS FOR PLAINTIFF

**Diamandia Lingos**

*Law Offices of Steven J. Parsons*
*10091 Park Run Dr., #200*
*Las Vegas, NV 89145-8868*
*(702) 384-9900; fax (702) 384-5900*
*Andrew@sjplawyer.com*

Page 11 of 11

